**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LUIS RODRIGUEZ (#381927)** | **CIVIL ACTION** |
| **VERSUS** | |
| **N. BURL CAIN, ET AL.** | **NO. 10-0736-FJP-DLD** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 31, 2011.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**LUIS RODRIGUEZ (#381927)**                          **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                   **NO. 10-0736-FJP-DLD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motions for Summary Judgment, rec.doc.nos. 18, 31 and 57. These motions are opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Secretary James M. LeBlanc, Warden N. Burl Cain, Ass't Warden John Larry Calvert, Mental Health Social Worker Dave Ankenbrand, Major Chad Oubre, and unidentified "John Doe" employees at LSP, complaining that the defendants have violated his constitutional rights, commencing in October, 2009, by exhibiting deliberate indifference to his serious medical needs. Specifically, the plaintiff complains that, when he arrived at LSP in October, 2009, he was not provided with shoes of any kind and, as a result, developed a foot infection and was unable to utilize the exercise yard, which has caused him physical and mental pain and suffering. In addition, the plaintiff complains that the defendants refused his requests for state-issued clothing and for access to his legal materials. Finally, the plaintiff complains that when he requested assistance from the prison's mental health department, his requests were refused or ignored.

The defendants move for summary judgment, relying upon the pleadings, Statements of Undisputed Facts, certified copies of the plaintiff's administrative remedy proceedings, certified copies of pertinent portions of the plaintiff's medical records, certified copies of the plaintiff's Master Prison Record, Inmate Location Sheets, Conduct Records, Property Inventory Forms, Canteen Records, and Shower Yard and Tier Rosters, two (2) disciplinary reports dated October 28, 2009

(charging the plaintiff with Attempted Escape and Property Destruction), LSP Directive No. 12.003 (relative to Clothing, Hygiene and Bedding Supplies), LSP Directive No. 17.002 (relative to Inventory/Storage of Inmate Property), LSP Directive No. 09.042 (relative to Offender Personal Property), excerpts from the Camp J Property Log Book, and the affidavits of Rhonda Z. Weldon, Dr. Jonathan Roundtree and defendant Chad Oubre.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little, supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In his Complaint, as amended, the plaintiff alleges that he arrived at LSP on October 29, 2009, and was immediately classified to Camp J, a punitive segregated housing unit. This classification was allegedly based on the plaintiff's having attempted to escape immediately prior to his arrival at LSP, for which offense the plaintiff was ultimately sentenced to twelve weeks' loss of telephone and canteen privileges and to confinement at Camp J. The plaintiff asserts that although he was provided with a jumpsuit, a blanket and two (2) bed sheets, he was not provided with any shoes, shower slippers or underclothing. When he requested that defendant Oubre provide him with shoes, the defendant allegedly responded by advising the plaintiff to submit a clothing request form to the security officer who was working on the cell tier. According to the plaintiff, he submitted such a form but never received any shoes. On December 11 and 16, 2009, the plaintiff allegedly spoke with defendant Calvert and requested that the defendant provide him with shoes and clothing, with his legal and personal property, and with an opportunity to exercise in the recreation yard, but the defendant took no action in response to the plaintiff's requests. In addition, the plaintiff allegedly spoke to other officers on the cell tier and forwarded correspondence to defendant Calvert and to other prison officials advising them of his concerns, but no action was taken to address these problems. The plaintiff contends that, because he had no shoes, security officers repeatedly refused to allow him to go on the exercise yard. As a result, he was "limited to excercising [sic] in his prison cell ... which was not at all rewarding to his overall health." In addition, because he had no shower slippers, he was forced to shower in his bare feet, which allegedly caused him to develop an infection for which he is still being treated. The plaintiff also complains that, because he was deprived of shoes during the coldest months of the year, his feet were always cold. As a result of these deprivations, he allegedly suffered extreme stress and mental anguish which resulted in weight loss, hair loss, constipation and hemorrhoids.

In response to the plaintiff's allegations, the defendants first assert that the plaintiff has failed to exhaust administrative remedies, as mandated by 42 U.S.C. § 1997e, relative to his claim that defendant Warden Burl Cain failed to properly train and/or supervise LSP employees.

Pursuant to this statute, the plaintiff was required to exhaust available administrative remedies relative to all of his claims prior to commencement of a lawsuit in federal court relative to prison conditions. This provision is mandatory and applies broadly to "all suits about prison life". Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.ed.2d 12 (2002). Further, a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The primary purpose of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" Johnson v. Johnson, supra.

From a review of the plaintiff's administrative grievance, it appears that the defendants' motion is well-taken in this regard. In his original Complaint, the plaintiff made reference to grievance No. LSP-2009-0890 as being the grievance which he filed wherein he asserted the claims which he now pursues in this litigation. A review of the certified administrative records relative to this grievance reflects that the plaintiff made no claim therein that defendant Cain failed to properly train and/or supervise subordinate officers at LSP. Accordingly, it appears clear that the plaintiff did not place prison officials on notice of this claim or allow them an opportunity to address this issue. See Johnson v. Johnson, supra. Therefore, the plaintiff has failed to complete and exhaust administrative remedies relative to this claim, and the claim is subject to dismissal for this reason. In fact, the plaintiff concedes as much in a subsequent pleading, see rec.doc.no. 28, and further states that he no longer intends to pursue this claim in this lawsuit.[1]

---

[1] The defendants also assert that the plaintiff has failed to exhaust administrative remedies relative to his claim that the defendants are liable for their negligent acts or omissions. The Court need not address this contention, however, because the plaintiff asserts that he has no intention of pursuing a negligence claim in this proceeding. See rec.doc.no. 28. And in any event,

The defendants next contend that any claim asserted by the plaintiff for monetary damages against the defendants in their official capacities should be dismissed pursuant to the Eleventh Amendment to the United States Constitution. This Amendment prohibits the bringing of any lawsuit in federal court seeking monetary damages against a state, its agencies, or persons acting as official representatives thereof. In Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United States Supreme Court addressed the distinction between official capacity claims and individual capacity claims and made clear that a claim asserted against a state official in his official capacity for monetary damages is treated as a claim against the State and is therefore barred by the Eleventh Amendment.[2] Accordingly, the defendants' motion is well-taken in this regard, and the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the defendants next contend that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to sufficiently allege their participation in any violation of his constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45

---

to the extent that the plaintiff's subsequent pleadings may seek to re-assert such claims, see, e.g., rec.doc.no. 95 (wherein the plaintiff states that "any and all state law claims that are inferred and/or asserted in the within suit, are not barred"), the Court will recommend that the exercise of supplemental jurisdiction over the plaintiff's state law claims, including any state law claims of negligence, be declined.

[2] In contrast, a suit against a state official in his individual or personal capacity, seeking to impose individual liability upon a government official for actions taken by the official under color of state law, is not treated as a suit against the state. Thus, a showing by the plaintiff that a defendant state official, acting individually and under color of state law, has caused the deprivation of the plaintiff's federal rights, is enough to establish personal liability in a § 1983 lawsuit. Further, a state official in his or her official capacity, when sued for injunctive relief, is not a prohibited defendant because official capacity actions for prospective relief are not treated as actions against the state. Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). See also 15 Am.Jur.2d Civil Rights § 101.

F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id. In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because the plaintiff has failed to allege that the defendants have participated in any violation of the plaintiff's constitutional rights.[3]

In asserting the defense of qualified immunity, the defendants first assert that the plaintiff has failed to sufficiently allege the personal participation of defendants James LeBlanc and Burl Cain in any violation of his constitutional rights. Upon a review of the plaintiff's pleadings, the Court finds that the defendants' motion in this regard is well-taken. Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must either have been personally and directly involved in conduct causing an alleged deprivation of the inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). Any allegation that the defendants are responsible for the actions of subordinate officers or co-employees is insufficient to state a claim under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, in the absence of direct personal

---

[3] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

participation by a supervisory official in the alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law. Lozano v. Smith, supra.

Applying the foregoing standard, it appears that the plaintiff has insufficiently alleged that defendants LeBlanc and Cain have taken any action which may be characterized as a violation of the plaintiff's constitutional rights. Specifically, the plaintiff makes no assertion that these defendants participated directly or personally in the deprivation of the plaintiff's shoes, clothing, legal materials or opportunities for exercise or medical care. To the contrary, the most which the plaintiff has alleged relative to these defendants is that, as the Secretary of the Louisiana Department of Public Safety and Corrections and as the Warden at LSP, respectively, these defendants have supervisory authority at the prison and a general obligation to ensure that the plaintiff's constitutional needs are met. As previously noted, however, mere supervisory authority is not a basis for liability under § 1983. The plaintiff further alleges that these defendants were placed on notice of his claims through his filing of administrative grievances. The mere fact that the plaintiff may have filed one or more administrative grievances at the prison, however, or that the defendants' respective offices may have received and processed same, does not support a finding that the defendants were place on actual notice of the plaintiff's claims, particularly at a correctional facility housing more than 5,000 inmates. See Anderson v. Pratt, 2002 WL 1159980 (N.D. Tex., May 29, 2002) (finding that receipt and denial of an inmate's grievance by the warden's office did not establish personal involvement on the part of the warden in the alleged deprivation of the inmate's constitutional rights). Further, the law is clear that there is no constitutional violation in any alleged failure to investigate and/or respond favorably to an inmate's administrative grievances in any event. See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005). Accordingly, it does not appear that the plaintiff has stated a claim for relief against defendants LeBlanc and Cain, and these defendants are therefore entitled to a dismissal of the plaintiff's claims asserted against them.

The defendants next address the plaintiff's claim that they failed to provide him with shoes upon his initial classification to Camp J or at any time thereafter for a period in excess of 358 days, resulting in his alleged inability to exercise outside of his cell. This claim implicates the plaintiff's right, under the Eighth Amendment, to be free from exposure to cruel and unusual conditions of confinement. In this regard, while the Eighth Amendment "does not mandate comfortable prisons", Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the Constitution does impose upon prison officials at least minimal requirements in the treatment and facilities which they provide to prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994), citing Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, under a subjective standard, the Court must determine whether the prison officials responsible for the deprivation were "'deliberately indifferent' to inmate health or safety". Farmer v. Brennan, supra. Specifically, in order to find liability, the Court must find that the named defendant prison officials were both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and that they also in fact drew the inference. Id. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra. Further, in appropriate circumstances, deliberate indifference may be inferred from the obviousness of the substantial risk. Farmer v. Brennan, supra.

Initially, the Court finds that while the failure to provide an inmate with shoes could, under some circumstances, amount to a constitutional violation, it does not rise to this level under the circumstances alleged in this instance. The plaintiff was confined to a cell for approximately 23

hours per day upon his placement in Camp J and thus had not the greatest need for footwear while so confined. Further, as pointed out by the defendants and not refuted by the plaintiff, his property inventory sheet reflects that, upon placement in Camp J in October, 2009, he had in his possession five (5) pairs of socks, five (5) pairs of boxer shorts, five (5) t-shirts, an undershirt, and a pair of shower shoes. According to the affidavit of defendant Chad Oubre, the plaintiff would have been allowed to retain these items in his Camp J cell, and there is no explanation as to why the plaintiff was not allowed to retain his shower shoes or was not allowed to request them from his stored property. In any event, the plaintiff concedes that he was provided with a blanket, a jumpsuit and two (2) bed sheets, and these items, in theory, would have provided him with reasonable protection from the cold of which he complains in this proceeding. And as noted below, he was apparently able to obtain shower shoes within approximately 3½ months of his placement in Camp J.

The Court is aware of no jurisprudence in this Circuit which holds that the failure to provide an inmate with shoes in these circumstances amounts to a deprivation of the minimal civilized measure of life's necessities or of a basic human need.[4] Cf., Accordingly, undertaking the qualified immunity analysis, it does not appear that a reasonable security officer would have been placed on notice that such a failure would amount to a constitutional deprivation.

Finally, the plaintiff acknowledges that when he asked defendant Oubre about his need for shoes, defendant Oubre advised the plaintiff to fill out a property request form and to submit it to the tier security officer. This is consistent with defendant Oubre's affidavit, wherein he states that, in order for the plaintiff to obtain a pair of deck shoes, "he would have had to have submitted a written request for deck shoes to the property clerk at Camp J.... [who] documents each and every

---

[4] In other Circuits, there is some limited jurisprudence opining that shoes are a required item of clothing which must be provided by prison officials. See Miller v. Van Boening, 2011 WL 88422 (W.D. Wash., Feb. 11, 2011) (wherein in the court stated that, "[t]he court considers shoes a necessary item of clothing in the Pacific Northwest"); Wheat v. New York City Dept. of Correction, 2010 WL 5129065 (S.D. N.Y., Dec. 15, 2010) (holing that a failure to provide shoes may violate contemporary standards of decency). These cases, however, apparently deal with inmates confined in colder areas of the United States and do not deal with inmates confined in lockdown cells affording little opportunity for movement and so less need for footwear.

item of property that is requested by and distributed to inmates in a log book." Although the plaintiff asserts that he submitted several such requests, he has not provided the Court with copies of any such requests, and the certified copies of the Camp J property log book for the period between October, 2009 and October, 2010, reflect no evidence that the plaintiff ever did so. In any event, the defendants have provided unrefuted evidence, from the plaintiff's canteen records, that he in fact purchased a pair of shower shoes on February 15, 2010, within approximately 3½ months of his placement in Camp J. Accordingly, at that time the plaintiff unquestionably had some protection for his feet, and any claim which he may have relative to footwear should be limited to this period of time.

Notwithstanding the foregoing, the plaintiff also asserts that the deprivation of shoes prevented him from engaging in exercise outside of his cell for a substantial period of time, and this allegation requires more careful consideration as hereafter discussed. Specifically, the courts of this Circuit and others have repeatedly held that a reasonable opportunity for exercise is a basic human need which may not arbitrarily be revoked, see, e.g., Green v. Ferrell, 801 F.2d 765 (5th Cir. 1986); Ruiz v. Estelle, 679 F.2d 1115 (5th Cir. 1982), amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Maze v. Hargett, 200 F.3d 814 (5th Cir. 1999). While neither the Fifth Circuit nor the United States Supreme Court has held that inmates enjoy an absolute right to out-of-cell exercise, the Fifth Circuit has repeatedly held that an extended deprivation of exercise opportunities may impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case. See, e.g., Hewitt v. Henderson, 271 Fed.Appx. 426 (5th Cir. 2008); Green v. Ferrell, supra; McGruder v. Phelps, 609 F.2d 1023 (5th Cir. 1979). The defendants, moreover, are deemed to be aware of the established jurisprudence that some opportunity for exercise is mandated for inmates serving long sentences of confinement. See, e.g., Ruiz v. Estelle, supra ("[i]nmates require regular exercise to maintain reasonably good physical and psychological health.").

Notwithstanding the foregoing, the Court concludes that the plaintiff will be unable to make

a showing of deliberate indifference in this case. In Hernandez v. Velasquez, 522 F.3d 556 (5th Cir. 2008), the Fifth Circuit upheld the grant of summary judgment to defendants who maintained an inmate in segregated confinement for 13 months without affording him an opportunity for exercise outside of his cell. In that case, the Court stated:

> Assuming Hernandez can show a sufficiently serious deprivation, he also must show that prison officials acted with "deliberate indifference" to his health or safety. This follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. Id. [citing Farmer v. Brennan, supra]; see also id. at 837, 114 S.Ct. 1970 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'.").... We conclude that Hernandez cannot show deliberate indifference as required by Farmer because there is no record evidence he was ever placed at "substantial risk of serious harm." ... Assuming the evidence creates a fact issue as to whether Hernandez suffered from muscle atrophy, stiffness, loss of range of motion, and depression, there is nonetheless no indication these conditions posed a substantial risk of serious harm. The district court properly concluded there was no genuine issue as to whether Hernandez suffered a "serious illness or injury" sufficient to constitute an Eighth Amendment violation.

Similarly, the Fifth Circuit in Haralson v. Campuzano, 356 Fed.Appx. 692 (5th Cir. 2009), upheld a grant of summary judgment in favor of prison officials who had confined an inmate in a cell in the prison infirmary for a period of 7 months without any opportunity for out-of-cell exercise, notwithstanding that the inmate suffered muscle atrophy and depression as a result of such confinement. In the instant case, although the plaintiff asserts that he was not allowed to engage in out-of-cell exercise for a period of approximately one year, the medical conditions of which he complains as a result of such deprivation, hemorrhoids and constipation (for which the plaintiff received treatment in the form of creams, ointment, suppositories and stool softeners) and insomnia, do not amount to conditions which posed a "substantial risk of serious harm" as would support a claim of deliberate medical indifference. See, e.g., Domenech v. Taylor, 2010 WL 6428459 (N.D. N.Y., Sept. 8, 2010) (inmate's complaints of hemorrhoids, which were being treated, were without more, "a minor issue, far removed from the category of medical conditions that have been deemed 'sufficiently serious' by other courts.'"); Byrd v. Adams, 2010 WL 184448 (N.D. Tex., Jan. 20, 2010), affirmed, 389 Fed.Appx. 411 (5th Cir. 2010) (failure to provide hygienic supplies in the form of extra toilet paper for hemorrhoids which were being treated, in any event, with cream

and ointment was not deliberate indifference to a serious medical need); Moy v. Evans, 2007 WL 315088 (S.D. Ill, Jan. 31, 2007) (inmate's complaint of constipation and accompanying pain did not constitute a serious medical need); Webb v. McKnight, 2006 WL 3761382 (W.D. Va., Dec.20, 2006), affirmed, 225 Fed.Appx. 117 (5th cir. 2007) (inmate's complaints which included indigestion, constipation, and emotional distress did not constitute a serious medical need); Ross v. McGinnis, 2004 WL 1125177 (W.D. N.Y., March 29, 2004) (inmate's complaints which included abdominal pain and constipation did not constitute a serious medical need); Colby v. Gusman, 2010 WL 5477681 (E.D. La., Nov. 23, 2010) (inmate's complaints of insomnia did not amount to a serious medical need); Wiley v. Blanco, 2007 WL 1747019 (E.D. La., June 15, 2007) (same).[5] Accordingly, although the plaintiff complains that the referenced medical conditions were caused by his period of confinement without exercise, the Court is compelled to conclude, as in Hernandez, that there is no genuine issue of fact in this case as to whether the plaintiff suffered a "serious illness or injury" sufficient to constitute an Eighth Amendment violation. And in any event, once the plaintiff purchased a pair of shower shoes in February, 2010, it appears that there was nothing which then prevented him from walking on his cell tier for one hour per day, as allowed by prison rules, and the defendants have provided records reflecting that, commencing on February 4, 2010, the plaintiff did in fact often make use of this daily "tier time".[6] Accordingly, inasmuch as the plaintiff was

---

[5] In addition, the defendants have provided the affidavit of Dr. Jonathan Roundtree, which attests that the plaintiff's alleged inability to exercise would not have caused him to suffer the hemorrhoids of which he complained.

[6] From a review of the plaintiff's Yard, Shower and Tier Rosters, it appears to the Court that, between November, 2009, and February, 2010, he was assigned to Level 2 of the Camp J Management Program and, as a result, was apparently not allowed to enjoy a daily one-hour of "tier time" outside of his cell. Commencing in February, 2010, however, the Rosters reflect that the plaintiff was routinely allowed to enjoy this privilege, and the plaintiff has offered nothing to dispute the veracity of this documentation. The defendants also point to this documentation to assert that the plaintiff was allowed to utilize the outside exercise yard between November, 2009 and October, 2010. The plaintiff strongly disputes this assertion, however, and in light of this dispute, the Court declines to accept this documentation for this purpose. In addition, although these Rosters appear to suggest that the plaintiff was allowed to go on the exercise yard during this period, they also suggest that he sometimes refused this privilege, and the defendants have produced none of the refusal forms which, according to prison regulations, should have been signed had the plaintiff so

apparently allowed to exercise outside of his cell on his cell tier beginning in February, 2010, and inasmuch as the Fifth Circuit, in any event, has found neither a constitutional entitlement to outdoors exercise nor a constitutional violation where the disallowance of exercise, as here, has not posed a substantial risk of serious harm or resulted in any serious medical need, there is nothing in the record to establish that the defendants were deliberately indifferent to his serious medical needs. The defendants' motions for summary judgment, therefore, should be granted with respect to this issue.

The plaintiff also complains that, because the defendants failed to provide him with shower shoes between November, 2009, and February, 2010 (when he apparently purchased a pair), he developed a foot infection. Numerous courts have held, however, that the failure to provide shower shoes does not amount to deliberate indifference. See, e.g., Brinkman v. Schriro, 2010 WL 2035594 (D. Ariz., May 20, 2010) (holding that "the lack of shower shoes does not constitute deliberate indifference"); Brown v. Goodman, 2010 WL 2202515 (S.D. Ala., April 19, 2010) (holding that the denial of shower shoes does not constitute the deprivation of a "basic human need"); Draper v. Western VA Regional Jail, 2009 WL 2232453 (W.D. Va., July 24, 2009) (holding that "shower shoes are not a basic human need and standing in a dirty shower stall with bare feet does not constitute cruel and unusual punishment"). Further, numerous court have also held that a fungal foot infection or athlete's foot does not constitute a serious medical need upon which a § 1983 lawsuit may rest. See Tsakona v. Cicchi, 308 Fed.Appx. 628 (3rd Cir. 2009) (finding that skin conditions, including "eczema of the feet ... [and] athlete's foot", are not serious medical needs); Rush v. Schrubbe, 2007 WL 2686843 (E.D. Wis., Sept. 11, 2007) (holding that "athlete's foot itself does not generally amount to an objectively serious medical condition, and thus the mere chance of acquiring it [from not being provided shower shoes] cannot reach that level either"); Landfair v. Sheahan, 878 F.Supp. 1106 (N.D., Ill. 1995) (holding that, although uncomfortable, a foot fungus

---

refused.

or athlete's foot, is not a serious medical need or injury). In this regard, the plaintiff's medical records reflect that he complained of a foot infection on March 3, 2010. On that date, he was treated with a fungal cream. When he complained again, he was provided with a referral to see a physician at the prison infirmary, and was thereafter treated with anti-fungal cream and with anti-fungal pills. By October 14, 2010, his medical records indicate that he advised that he no longer had a foot infection. Based upon this evidence, there is no basis for the imposition of liability in connection with this claim.

The plaintiff also asserts that he was denied adequate clothing and access to his legal materials while confined in Camp J. With regard to the former, however, he fails to state what items of clothing he allegedly needed or requested from prison officials and what clothing was denied to him. He acknowledges in his complaint that he was provided with a prison jumpsuit upon his placement in Camp J, and as previously noted, his property inventory forms reflect that at that time, he had socks, boxer shorts and t-shirts in his possession, items which he normally would have been allowed to retain in Camp J confinement. In the absence of any information in the record as to what clothing the plaintiff allegedly lacked, therefore, and in the absence of any allegation that he suffered any injury as a result of this deprivation, there is no basis for the imposition of liability relative to this claim.

With regard to the plaintiff's claim that he was denied access to his legal materials, the law is clear in this context that access to the courts is incorporated into the First Amendment's right to petition the government for redress of grievances. Wilson v. Thompson, 593 F.2d 1375 (5th Cir. 1979). In its most obvious and formal manifestation, this right protects an inmate's physical access to the courts. Thus, for example, prison officials may not block or refuse to transmit, through procedural devices, the transmission of legal documents which prisoners wish to send to the courts. Nor can they take other actions -- such as confiscating or destroying legal papers -- that would have a similar effect. Crowder v. Sinyard, 884 F.2d 804 (5th Cir. 1989), cert. denied, 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990). The right of access to the courts, however, "guarantees no particular methodology but rather the

conferral of a capability - the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 511 U.S. 1066, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). An inmate's right to complain, moreover, is limited to the making of non-frivolous complaints involving the assertion of legitimate constitutional rights, Johnson v. Rodriguez, 110 F.3d 299 (5th Cir. 1997). Finally, in order to prevail on a claim of the denial of meaningful access to the courts, the law is clear that some showing of actual detriment caused by the challenged conduct must be made. Crowder, supra, citing Howland v. Kilquist, 833 F.2d 639 (7th Cir. 1987).

In the instant case, the plaintiff makes no attempt in his Complaint to show prejudice resulting from the defendants' actions. The most which may be gleaned from documents filed by the plaintiff, specifically from his initial administrative grievance, is that in late 2009 or early 2010, he was facing an unspecified deadline in an unspecified court proceeding and that he needed to prepare for same. This contention, however, is entirely conclusory and is supported by no factual development whatever. Specifically, all that the plaintiff states in his grievance is that:

> Among other legal affairs, I had to put together a writ going to the 5th Circuit Court of Appeals to take advantage of a legal discrepancy and error affecting me directly by being convicted in the Jefferson Parish District, and as everyone is aware of, every legal matter in the courts is accompanied by a deadline. Therefore having access to my legal materials is beyond question eminent.

The plaintiff fails to state, however, the non-frivolous nature of the pending court proceeding, the nature of the deadline which he allegedly faced, the nature of any legal materials which he needed, why those materials were in fact needed to meet the upcoming deadline, or whether he missed any deadline or suffered any actual detriment in the referenced legal proceeding resulting from the absence of his legal materials. Accordingly, in the absence of any factual allegations regarding these matters and in the absence of any attempt whatever to address any prejudice or detriment he may have suffered as a result of the defendants' alleged wrongful conduct, the plaintiff has failed to state a claim of the violation of his constitutional rights in this regard.

Finally, the plaintiff asserts that on numerous occasions, he sought medical attention for mental health issues, but defendant David Ankenbrand, a prison social worker, repeatedly denied

such requests. In this regard, in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial constitutes "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation which he believes he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. Farmer v. Brennan, supra. As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The deliberate indifference standard is high; the plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001).

  This claim as well must fail. As previously noted, numerous courts have opined that mere insomnia is not a serious medical need which may form the basis for a claim of deliberate indifference under § 1983, and this is all that the plaintiff's mental health records reflect that he complained about. See Colby v. Gusman, supra; Wiley v. Blanco, supra. Further, the plaintiff's medical records do not support his claim asserted against defendant Ankenbrand in any event. According to these records, this defendant, a social worker employed at LSP, conducted an initial evaluation of the plaintiff's mental status upon his arrival at LSP on October 29, 2009, and the plaintiff advised of no mental health problems at that time. The next day, during regular rounds, the defendant again made contact with the plaintiff and again the plaintiff complained of no mental

health issues. On February 25, 2010, the defendant evaluated the plaintiff's mental status based upon a referral from a security officer. At that time, the plaintiff again reported no mental health issues but did state that he was having trouble sleeping. Defendant Ankenbrand took no action relative to this complaint, however, noting that the plaintiff was scheduled to see an LSP psychiatrist on that date. Approximately a week later, on March 2, 2010, the defendant again made contact with the plaintiff during routine rounds, and the plaintiff voiced no mental health concerns at that time. Finally, on March 25, 2010, the plaintiff was evaluated by two mental health practitioners at LSP, Dr. William Reinbold and Registered Nurse Eddie Pendarvis. Dr. Reinbold informed the plaintiff at that time that the mental health department at LSP does not treat sleep problems. On two subsequent occasions, May 25 and August 24, 2010, defendant Ankenbrand again made contact with the plaintiff during routine rounds, and on each occasion, the plaintiff voiced no mental health concerns. Based on these records, together with the fact that insomnia is not a serious medical need sufficient to support a claim of deliberate indifference, it is clear that the plaintiff's claim asserted against defendant Ankenbrand is without merit and must be dismissed.[7]

As a final matter, the plaintiff also seeks to invoke the supplemental jurisdiction of this court. District courts, however, may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, inasmuch as the Court recommends dismissal of the plaintiff's federal claims, it is appropriate that the Court decline to exercise supplemental jurisdiction over the

---

[7] To the extent that the plaintiff may have complained to health care providers other than defendant Ankenbrand regarding his alleged insomnia, any failure of these non-defendant providers to attend to his medical needs may not be attributed to the named defendant. See Lozano v. Smith, 718 F.2d 756, at 768 (5th Cir. 1983).

plaintiff's state law claims.[8]

## RECOMMENDATION

It is recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims, and that the defendants' Motions for Summary Judgment, rec.doc.nos. 18, 31 and 57, be granted, dismissing the plaintiff's claim asserted against defendant Burl Cain – that the defendant failed to train and/or supervise his employees – for failure to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e, and dismissing all of the plaintiff's remaining claims asserted against the defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 31, 2011.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**

---

[8] Although the defendants pray for the entry of a "strike" against the plaintiff in accordance with 28 U.S.C. § 1915(g) for having filed an action which is frivolous, malicious or fails to state a claim upon which relief may be granted, the Court declines to make this finding.